1 DAVID J. ZUGMAN
  California State Bar Number 190818
2 964 Fifth Avenue, Suite 300
  San Diego, California 92101
3 Telephone: (619) 699-5931
  Facsimile: (619) 699-5932
4 dzugman@burchamzugman.com

5 Attorney for Guadalupe Heras De Melo-Samper

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10               (HONORABLE BARRY TED MOSKOWITZ)

11 UNITED STATES OF AMERICA,    )    Case No. 08CR0211-BTM
                                )
12              Plaintiff,       )
                                )
13 v.                           )    MEMORANDUM OF POINTS AND
                                )    AUTHORITIES
14 GUADALUPE,                   )
       HERAS DE MELO-SAMPER (1),)
15 ERICK,                       )
       HERAS DE MELO-SAMPER (2),)
16                              )
                 Defendants.    )
17                              )
                                )
18 _____)

19                              **I.**

20                        **INTRODUCTION**

21      Guadalupe Heras De Melo-Samper is charged with the importation of

22 cocaine into the United States with a quantity allegation which invokes

23 a 10 year minimum mandatory sentence under 21 U.S.C. §§ 841(b)(1)(A),

24 960(b)(1)(B).  These are her initial Rule 12 motions.

25                              **II.**

26                     **STATEMENT OF FACTS**

27      Guadalupe Heras De Melo-Samper was arrested on December 27th as a

28

                                                    08CR0211-BTM

1 passenger in a vehicle driven by her son, Erick Heras De Melo-Samper.[1]

2 According to the reports[2] produced by the government, Erick was the

3 driver of a 2003 Mitsubishi Montero.  Guadalupe was the passenger.

4     At primary inspection, Erick presented border-crossing cards for

5 the two.  The officer asked whose car it was; Erick responded that it

6 was his.  The officer asked why he was driving a Mexican plated vehicle;

7 Erick said that he had not changed the registration yet.  The officer

8 then asked Erick whether he knew that he needed to export the vehicle to

9 Mexico.  Erick did not give a clear answer.  The officer then noticed

10 that there was a computer generated referral for the car so he sent it

11 to secondary inspection.

12     The vehicle was sent to secondary and a narcotics detector dog was

13 brought to sniff the vehicle.  The dog altered to the undercarriage of

14 the car.  The canine officer then inspected the car with the 7 point

15 technique and found welding marks under the carpet that appeared to be

16 non-factory.  The floor was peeled up and packages were found which were

17 then field-tested for the presence of cocaine.  A total of 24 packages

18 with 26.9 kilos of cocaine were recovered.  At that point, Erick and

19 Guadalupe were arrested.

20     Post-arrest, Erick was interrogated and admitted to being hired by

21 a man named "Nacho" to transport drugs across the border for $100 a

22 package.  Guadalupe was then interrogated.  She first denied having any

23 knowledge about the smuggling venture.  However, when the agents told

24

25     [1]   Ms. Heras De Melo-Samper will refers to herself and her son by
first name.

26

27     [2]   Guadalupe Heras De Melo-Samper does not necessarily agree with
the government's version of the events, but recounts them here for
context.  The defense may take a different position at trial.

28

1 her about Erick's post-arrest statement, she told the agents that what

2 Erick said was true.

### III.

### MOTIONS

**1.   The Government Should Produce Discovery.**

Ms. Heras De Melo-Samper requested Rule 16 discovery by phone and letter on January 27, 2008.  61 pages of discovery and a DVD of Ms. Heras De Melo-Samper's statement were produced.  Ms. Heras De Melo-Samper does not yet have the Report of Investigation ("ROI"), the "computer generated referral" which was the basis for the referral to secondary and is therefore seminal to the case, or the statement of Erick Heras De Melo Samper.  Ms. Heras De Melo-Samper has specifically requested each of these items.

Pursuant to Fed. R. Crim. P. 12(d)(2), 16(a), and 26.2, <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and all other applicable rules and statutes, the Government should produce discovery.

Ms. Heras De Melo-Samper asserts her right to evidence regarding:

(1)   <u>The Defendant's Statements</u>   Under Fed. R. Crim. P. 16 (a)(1)(A), all written or recorded statements made by the defendant; the substance of any statements made by the defendant which the government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the government intends to introduce at trial, and any written summaries of the defendant's oral statements contained in the handwritten notes of the government agent; any response to any <u>Miranda</u> warnings which may have been given to the defendant (<u>See</u> <u>United States v. McElroy</u>, 697 F.2d 459 (2d Cir. 1982)); and any other statements by the defendant that are

1  discoverable under Fed. R. Crim. P. 16(a)(1)(A);

2      (2)  <u>Arrest Reports, Notes and Dispatch Tapes</u>.  Ms. Heras De Melo-

3  Samper also specifically requests that all arrest reports, notes, and

4  dispatch or any other tapes that relate to the circumstances surrounding

5  her arrest or any questioning, be turned over.  This request includes,

6  but is not limited to, any rough notes, records, reports, transcripts or

7  other documents in which statements of Ms. Heras De Melo-Samper or any

8  other discoverable material is contained.  This is all discoverable under

9  Fed. R. Crim. P. 16(a)(1)(A) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

10 <u>See also</u> <u>Loux v. United States</u>, 389 F.2d 911 (9th Cir. 1968); <u>United</u>

11 <u>States v. Johnson</u>, 525 F.2d 999 (2d Cir. 1975); <u>United States v. Lewis</u>,

12 511 F.2d 798 (D.C. Cir. 1975);

13     Arrest reports, investigator's notes, memos from arresting officers,

14 dispatch tapes, sworn statements, and prosecution reports pertaining to

15 Ms. Heras De Melo-Samper are available under Fed. R. Crim. P. 16(a)(1)(B)

16 and (C), Fed. R. Crim. P. 26.2 and 12(i).  **Preservation of rough notes is**

17 **specifically requested, whether or not the government deems them**

18 **discoverable at this time;**

19     (3)  <u>Reports of Scientific Tests or Examinations</u> Pursuant to Fed. R.

20 Crim. P. 16(D), Ms. Heras De Melo-Samper requests the reports of all

21 tests and examinations conducted upon the evidence in this case,

22 including but not limited to any fingerprint analysis that is within the

23 possession, custody, or control of the government, the existence of which

24 is known, or by the exercise of due diligence may become known, to the

25 attorney for the government, and which are material to the preparation of

26 the defense or which are intended for use by the government as evidence

27 in chief at the trial;

28

1        (4)  Brady Material  Ms. Heras De Melo-Samper requests all documents,

2   statements, agents' reports, and tangible or other evidence favorable to

3   Ms. Heras De Melo-Samper on the issue of guilt and/or which affects the

4   credibility of the government's case.  Impeachment as well as exculpatory

5   evidence falls within Brady's definition of evidence favorable to the

6   accused.  United States v. Bagley, 473 U.S. 667 (1985); United States v.

7   Agurs, 427 U.S. 97 (1976);

8        (5)  Evidence Seized  Evidence seized as a result of any search,

9   either warrantless or with a warrant, is discoverable under Fed. R.

10  Crim. P. 16(a)(1)(C), and is hereby requested;

11       (6)  Request for Preservation of Evidence  Ms. Heras De Melo-Samper

12  specifically requests that any and all videotapes of the Port of Entry

13  at or near the time of the arrest, dispatch tapes, recordings of

14  interrogations, or any other physical evidence that may be destroyed,

15  lost, or otherwise put out of the possession, custody, or care of the

16  government and which relate to the arrest or the events leading to the

17  arrest in this case be preserved.  This request includes, but is not

18  limited to, any samples used to run any scientific tests and any

19  evidence seized from any third party;

20       (7)  Tangible Objects  Ms. Heras De Melo-Samper requests, under Fed.

21  R. Crim. P. 16(a)(2)(C), the opportunity to inspect and copy as well as

22  test, if necessary, all other documents and tangible objects, including

23  any alleged contraband, photographs, books, papers, documents,

24  photographs, buildings, automobiles, or places, or copies, depictions,

25  or portions thereof which are material to the defense or intended for

26  use in the government's case-in-chief, or were obtained from or belong

27  to Ms. Heras De Melo-Samper;

28

1    (8)    <u>Evidence of Bias or Motive to Lie</u> Ms. Heras De Melo-Samper

2 requests any evidence that any prospective government witness is biased

3 or prejudiced against Ms. Heras De Melo-Samper, or has a motive to

4 falsify or distort his or her testimony. <u>Pennsylvania v. Ritchie</u>, 480

5 U.S. 39 (1987); <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir.

6 1988);

7    (9)    <u>Impeachment Evidence</u> Ms. Heras De Melo-Samper requests any

8 evidence that any prospective government witness has engaged in any

9 criminal act, whether or not resulting in a conviction, and whether any

10 witness has made a statement favorable to Ms. Heras De Melo-Samper. <u>See</u>

11 Fed. R. Evid. 608, 609 and 613. Such evidence is discoverable under

12 <u>Brady v. Maryland</u>, supra. <u>See</u> <u>United States v. Strifler</u>, 851 F.2d 1197

13 (9th Cir. 1988) (witness' prior record); <u>Thomas v. United States</u>, 343

14 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness'

15 credibility);

16    (10)    <u>Evidence of Criminal Investigation of Any Government Witness</u>

17 Ms. Heras De Melo-Samper requests any evidence that any prospective

18 witness is under investigation by federal, state or local authorities

19 for any criminal conduct. <u>United States v. Chitty</u>, 760 F.2d 425 (2d

20 Cir. 1985);

21    (11)    <u>Evidence Affecting Perception, Recollection, Ability to</u>

22 <u>Communicate, or Truth Telling</u>  The defense requests any evidence,

23 including any medical or psychiatric report or evaluation, tending to

24 show that any prospective witness' ability to perceive, remember,

25 communicate, or tell the truth is impaired; and any evidence that a

26 witness has ever used narcotics or other controlled substance, or has

27 ever been an alcoholic. <u>United States v. Strifler</u>, 851 F.2d 1197 (9th

28

1  Cir. 1988); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 224 (4th Cir. 1980);

2      (12)  <u>Name of Witnesses Favorable to Ms. Heras De Melo-Samper</u>  Ms.

3  Heras De Melo-Samper requests the name of any witness who made an

4  arguably favorable statement concerning Ms. Heras De Melo-Samper.

5  <u>Jackson v. Wainwright</u>, 390 F.2d 288 (5th Cir. 1968); <u>Chavis v. North</u>

6  <u>Carolina</u>, 637 F.2d 213, 223 (4th Cir. 1980); <u>Jones v. Jago</u>, 575 F.2d

7  1164, 1168 (6th Cir.), <u>cert. denied</u>, 439 U.S. 883 (1978); <u>Hudson v.</u>

8  <u>Blackburn</u>, 601 F.2d 785 (5th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1086

9  (1980);  Ms. Heras De Melo-Samper would remind the Government that it

10 has a duty to seek out exculpatory information that is the hands of the

11 police.  <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995).

12     (13)  <u>Statements Relevant to the Defense</u> Ms. Heras De Melo-Samper

13 requests disclosure of any statement that may be "relevant to any

14 possible defense or contention" that she might assert.  <u>United States v.</u>

15 <u>Bailleaux</u>, 685 F.2d 1105 (9th Cir. 1982).  This includes in particular

16 any statements by any percipient witnesses.

17     (14)  <u>Jencks Act Material</u> The defense requests all material to which

18 defendant is entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, and

19 Fed. R. Crim. P. 26.2.  Ms. Heras De Melo-Samper specifically requests

20 pretrial production of these statements so that the court may avoid

21 unnecessary recesses and delays for defense counsel to properly use any

22 Jencks statements and prepare for cross-examination;

23     (15)  <u>Giglio Information</u> Pursuant to <u>Giglio v. United States</u>, 405

24 U.S. 150 (1972), Ms. Heras De Melo-Samper requests all statements and/or

25 promises, express or implied, made to any government witnesses, in

26 exchange for their testimony in this case, and all other information

27 which could arguably be used for the impeachment of any government

28

1  witnesses;

2    (16)  <u>Government Examination of Law Enforcement Personnel Files</u>  Ms.

3  Heras De Melo-Samper requests that the government examine the personnel

4  files and any other files within its custody, care or control, or which

5  could be obtained by the government, for all testifying witnesses.

6  Ms. Heras De Melo-Samper requests that these files be reviewed by the

7  government attorney for evidence of perjurious conduct or other like

8  dishonesty, or any other material relevant to impeachment, or any

9  information that is exculpatory, pursuant to its duty under <u>United States</u>

10 <u>v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991). <u>See</u> <u>United States v. Jennings</u>,

11 960 F.2d 1488, 1492 (9th Cir. 1992).

12    Ms. Heras De Melo-Samper specifically requests that any and all

13 impeachment information with respect to the arresting officers be either

14 turned over to Ms. Heras De Melo-Samper or submitted to the Court for <u>in</u>

15 <u>camera</u> review.

16    (17)  Pursuant to Fed. R. Crim. P. 16(a)(1)(E), Ms. Heras De Melo-

17 Samper requests disclosure of the identities, qualifications, and

18 testimony of any expert witnesses the government intends to call at

19 trial.

20    (18)  Pursuant to Fed. R. Crim. P. 16(a)(1)(E), Ms. Heras De Melo-

21 Samper requests summaries of any expert witness the government intends

22 to call, along with the identities of those witnesses.

23    Through this motion, Ms. Heras De Melo-Samper wishes to exercise

24 her rights under Rule 16. As soon as the Government tells Ms. Heras De

25 Melo-Samper that discovery is completed, then Ms. Heras De Melo-Samper

26 will comply with her reciprocal obligations under Federal Rule of

27 Criminal Procedure 16(b)(1).

28

**2.   Misinstruction of the Grand Jury.**

This Court is familiar with this motion as it has no doubt heard the grand jury misinstruction claim before.  Consequently, Ms. Heras De Melo-Samper will sketch the argument (though if elucidation would aid decision further briefing would be provided.)  In this vein, Ms. Heras De Melo-Samper assumes that the Government does not dispute the basis for the argument, that is that the 2007 grand jury was instructed described below.  To the extent the Government disputes Ms. Heras De Melo-Samper's characterization, Ms. Heras De Melo-Samper would ask for production of the charge to the grand jury and the voir dire of the grand jury pursuant to Federal Rule of Criminal Procedure 6(d)(3)(E)(ii).[3]

United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) is the chief authority upon which Ms. Heras De Melo-Samper relies in arguing that the grand jury was misinstructed.  In Navarro-Vargas, the Ninth Circuit narrowly upheld the unmodified model grand jury instructions given to the grand jury in that case, but not without "conced[ing] that there may be more done to further increase the shielding power of the modern federal grand jury," and explicitly "not [ ] hold[ing] that the current instructions could not or should not be improved." See Navarro-Vargas, 408 F.3d at 1208.  The Navarro-Vargas majority, however, did not consider the proposition that grand jury has the power to charge either the lesser or the greater offense as part of

---

[3]     "(E) The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter:
[ . . .]
(ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."

1  its constitutional discretion.  Navarro-Vargas acknowledged the

2  significant discretion that the grand jury possesses to "refuse to

3  return an indictment even 'where a conviction can be obtained.'" 408

4  F.3d at 1200 (citing *Vasquez*, 474 U.S. at 263).  However, Navarro-Vargas

5  did not undertake to decide whether it was error for a district court to

6  instruct a grand jury that it may not consider the issue of punishment

7  as it is clear under our system that a grand jury does indeed consider

8  the issue of punishment.  It follows that Ms. Heras De Melo-Samper's

9  grand jury was misinstructed because it was not told of its ability to

10 consider punishment in deciding whether to charge a particular offense.

11      To the extent Navarro-Vargas upholds the grand jury instructions

12 which tell the grand jury that it 'should' consider whether probable

13 cause exists to charge the offense, it does not control the outcome in

14 Ms. Heras De Melo-Samper's case.  Indeed, the understanding of the grand

15 jury's power advocated by Ms. Heras De Melo-Samper is the only way to

16 vest the grand jury with its historical power.  The legitimacy of the

17 discretion vested in grand jurors is made clear in Vasquez.  That case

18 ultimately held that racial discrimination in grand jury selection is,

19 in effect, a structural error.  One of the reasons why racial

20 discrimination in grand jury selection is so prejudicial – even after a

21 petit jury conviction – is that the grand jury enjoys broad discretion

22 in choosing what to charge and whether to charge at all, even in a case

23 where there is not only probable cause, but proof beyond a reasonable

24 doubt.  See Vasquez, 474 U.S. at 263.  If a grand jury's discretion not

25 to charge an offense, or to charge a lesser offense, was not a

26 *legitimate* grand jury function, then Vasquez could not have relied upon

27 that attribute in determining whether the error in that case merited

28

1 reversal.

2    In fact, Vasquez reasoned that the grand jury's powers are much
3 more expansive:  it need not indict at all, even where a conviction can
4 be had, and it may choose to charge lesser or fewer offenses.  474 U.S.
5 at 263.  This lays bare why harmless error review is impossible for
6 grand jury misinstruction claims:  "even if a grand jury's determination
7 of probable cause is confirmed by a conviction on the indicted offense,
8 that confirmation in no way suggests that the discrimination did not
9 impermissibly infect the framing of the indictment and, consequently,
10 the nature or very existence of the proceedings to come."  Id.  Vasquez
11 thus found that the error was structural because racial discrimination
12 was pernicious *and* because the grand jury's broad discretion prevents a
13 reviewing court from ever knowing whether an unbiased and properly
14 constituted grand jury would have exercised its discretion differently:
15 "we simply cannot know that *the need to indict* would have been assessed
16 in the same way by a grand jury properly constituted."  Id. at 264
17 (emphasis added).  Vasquez's grand jury analysis is binding because it
18 is necessary to the decision *and* part of an "explication[] of the
19 governing rules of law."  See Seminole Tribe of Florida v. Florida, 517
20 U.S. 44, 67 (1996) (citations omitted).

21    Ms. Heras De Melo-Samper is entitled to the "traditional
22 functioning of the institution that the Fifth Amendment demands," see
23 United States v. Williams, 504 U.S. 36, 51 (1992), and by charging the
24 grand jury that was not allowed to consider question of punishment, Ms.
25 Heras De Melo-Samper was denied the traditional functioning of the grand
26 jury.  That error is structural.  See Navarro-Vargas, 408 F.3d at 1214,
27 1216-17 (Hawkins, J., dissenting); accord Navarro-Vargas, 367 F.3d at

28

1  903 (Kozinski, J., dissenting).[4]

2     Ms. Heras De Melo-Samper also objects to the dismissal of 2 grand

3  jurors from the panel.  Ms. Heras De Melo-Samper believes that these

4  otherwise qualified jurors were improperly dismissed because of the

5  erroneous view of the grand jury's role held by the presiding judge.

6  Not only was the dismissal of these 2 grand jurors improper, it had a

7  pedagogical effect on the rest of the grand jury which cemented the view

8  that the grand jury was disallowed from considering anything other than

9  whether probable cause existed.

10    This is only a brief outline of Ms. Heras De Melo-Samper argument

11 on the grand jury, he requests an opportunity to supplement this

12 pleading once the grand jury voir dire and charge has been disclosed.

13 Because the argument is made so frequently, Ms. Heras De Melo-Samper

14 must briefly comment on the government's inevitable argument that Ms.

15 Heras De Melo-Samper is advocating grand jury nullification.  One thing

16 should be clear: even if we are to call a grand jury's refusal to indict

17 "jury nullification," Navarro-Vargas does not "forbid" such action;

18 "there is nothing to prevent a grand jury from engaging in nullification

19 . . . ."  408 F.3d at 1204.  Indeed, Navarro-Vargas has acknowledged

20 that this exact sort of discretion is a *significant* power of the grand

21 jury.  Id. at 1200 (citations omitted).  This is not nullification and

22 the classic sense of the word.  When a prosecutor chooses not to

23 prosecute a case, that is not nullification; it is an exercise of

24 prosecutorial discretion.  Because the grand jury's "function . . . is

25

26    [4]    Because the Navarro-Vargas majority found no error in the form
   instruction given, and not modified, in that case, the majority had no
   occasion to address the structural error analyses in Judge Hawkins' and
27 Judge Kozinski's dissents.  This Court may therefore rely upon them as
   the persuasive authority of six Ninth Circuit judges.

28

1 most accurately described as prosecutorial," see Navarro-Vargas, 367

2 F.3d at 900 (Kozinski, J., dissenting), its decision not to approve a

3 prosecution for which probable cause exists is no more nullification

4 than a similar decision made by a prosecutor.

5     Finally, the instructions given to a grand jury are not covered by

6 the grand jury secrecy rule: "[t]he proceedings before the grand jury

7 are secret, but the ground rules by which the grand jury conducts those

8 proceedings are not." See United States v. Alter, 482 F.2d 1016, 1029

9 n.21 (9th Cir. 1973).  The voir dire of the prospective grand jurors is

10 not secret because it is not "a matter occurring before the grand jury."

11 See Fed. R. Crim. P. 6(e)(2)(B).  Because it is not such a matter, a

12 court reporter may not be required to keep it secret.  See id., Rule

13 6(e)(2)(A), (B)(iii).  While the Ninth Circuit has suggested that Rule

14 6 does not completely describe the scope of grand jury secrecy, see In

15 re Special Grand Jury (For Anchorage, Alaska), 674 F.2d 778, 781 (9th

16 Cir. 1982), any extension of the rule cannot contradict Rule 6, and that

17 Rule forbids the imposition of any secrecy requirement on a court

18 reporter other than one applicable to "a matter occurring before the

19 grand jury." See Fed. R. Crim. P. 6(e)(2)(A), (B)(iii).[5] Because there

20 is no grand jury until one is sworn, the voir dire of a venire of

21 prospective grand jurors cannot possibly be covered.

22     But even if Special Grand Jury controls, the standard in that case

23 still requires disclosure.  It holds that

24         members of the public have a right, ..., subject to the rule
          of grand jury secrecy, of access to the ministerial records in

25

26     [5]  The Rules permit a party to "challenge the grand jury on the
ground that it was not lawfully ... selected...."  Fed. R. Crim. P.

27 6(b)(1).  Such a challenge presupposes knowledge of the selection
process, including voir dire.

28

1  the files of the district court having jurisdiction of the
2  grand jury. Absent specific and substantial reasons for a
   refusal, such access should not be denied.

3  Id., 674 F.2d at 781. "Ministerial" records "generally relate to the

4  procedural aspects of the empanelling and operation of the Special Grand

5  Jury, as opposed to records which relate to the substance of the Special

6  Grand Jury's investigation." See id. at 779 n.1. See also In re Grand

7  Jury Proceedings, Special Grand Jury 89-2 (Rocky Flats Grand Jury), 813

8  F. Supp. 1451, 1469 (D. Colo. 1993) ("An instructive standard [in

9  determining whether to reveal grand jury records], is whether the

10 disclosed information would reveal the substance or essence of the grand

11 jury's investigation or deliberations."). The records requested here

12 relate only to the selection process, not "to the substance of the ...

13 Grand Jury's investigation." See id. at 779 n.1. They are not secret.[6]

14     In short, because the voir dire is inextricably linked with the

15 instructions to which Ms. Heras De Melo-Samper is entitled as a matter

16 of right, the transcript must be made available. See Alter, 482 F.2d at

17 1029 n.21. In addition, the voir dire is neither secret under Rule 6

18 nor can it be withheld under Special Grand Jury, which permits

19 disclosure of information that does not "relate to the substance of the

20 ... Grand Jury's investigation." See 674 F.2d at 779 n.1.

21     The Court may order disclosure of grand jury proceedings "at the

22 request of a defendant who shows that a ground may exist to dismiss the

---

24        [6]   Special Grand Jury suggested, but did not hold, that the names
   of the grand jurors may be secret. See 674 F.2d at 782 & n.4. Ms.
25 Heras De Melo-Samper disagrees; petit jurors are named publicly, and
   they perform their duties nonetheless. Nothing in Rule 6 supports a
26 non-disclosure rule. Moreover, redacting the names would potentially
   make the transcript unintelligible. If the Court disagrees, however, it
27 could order the court reporter to produce the transcript and substitute
   numbers or letters for the prospective grand jurors' names.

28

1  indictment because of a matter that occurred before the grand jury."

2  Fed. R. Crim. P. 6(e)(3)(E)(ii).    The Ninth Circuit requires a

3  "particularized need" to justify disclosure, see United States v.

4  Walczak, 785 F.2d 852, 857 (9th Cir. 1986), but that need cannot be any

5  different than the standard set forth in Rule 6(e)(3)(E)(ii): Ms. Heras

6  De Melo-Samper need only show that "a ground *may* exist to dismiss the

7  indictment because of a matter that occurred before the grand jury."

8  Fed. R. Crim. P. 6(e)(3)(E)(ii) (emphasis added).    That is why the

9  Rule's "general suggestion [is] in favor of disclosure."    See Walczak,

10  785 F.2d at 857.

11      Ms. Heras De Melo-Samper's motion to dismiss the indictment

12  explains why "a ground may exist to dismiss the indictment because of a

13  matter that occurred before the grand jury."    Fed. R. Crim. P.

14  6(e)(3)(E)(ii) (emphasis added).    Disclosure is therefore required.

15  **3.    Suppress Statements for Violation of Miranda.**

16      The Court is familiar with the requirements of Miranda: before the

17  prosecution obtains statements from a person in custody that defendant

18  must first be informed of his constitutional rights.    The form used by

19  the Government in Ms. Heras De Melo-Samper's case is defective for two

20  reasons.    First, it does not correctly explain that Ms. Heras De Melo-

21  Samper has a right to have an appointed lawyer with her throughout

22  questioning at no cost to her.    Second, it incorrectly tells her that

23  she renounced the right to cut-off questioning at any point.    These

24  flaws require suppression.

25      United States v. San Juan Cruz, 314 F.3d 384, 387 (9th Cir. 2003),

26  makes clear that the right to appointed counsel cannot be conveyed in a

27  confusing manner.    See 314 F.3d at 388 ("Requiring someone to sort out

28

1 such confusion is an unfair burden to impose on an individual already

2 placed in a situation that is inherently stressful."). Accord Perez-

3 Lopez, 348 F.3d at 848. The warning here states that "[i]f you cannot

4 pay an attorney, one will be provided to you before we ask you any

5 questions, if you want." That provision, too, is confusing at best,

6 misleading at worst. A suspect hearing that an attorney will be

7 "provided" if he is not able to pay an attorney may believe that the

8 warning refers to some one who has the resources to pay, but lacks

9 access to them (perhaps because the suspect is in custody): such a

10 person cannot pay an attorney because of that lack of access. The

11 warning does not say that it applies to some one who is indigent or who

12 lacks sufficient assets to retain counsel under any circumstances; it

13 refers to someone who cannot pay without specifying that indigence is

14 the reason for the inability.

15    Nor does the statement that counsel will be "provided" reflect that

16 the attorney will be appointed by the court at no expense to the

17 indigent defendant. "'[T]he warning ... must make clear that if the

18 arrested party would like to retain an attorney but cannot afford one,

19 the government is obligated to appoint an attorney for free.'" Perez-

20 Lopez, 348 F.3d at 848 (quoting San Juan Cruz, 314 F.3d at 388)

21 (ellipses in original, emphasis delted). The warning here does not

22 discuss whether the suspect can afford an attorney, nor does it say that

23 the attorney ultimately provided will be free. The warning is

24 defective. See id.

25    The Miranda form misled Ms. Heras De Melo-Samper into believing

26 that once she agreed to speak, she "renounced" the right to change her

27 mind by invoking the right to remain silent or the right to counsel

28

before and during questioning.  The form initially advised of her of the "continuous" right to cut off questioning when it stated 'you still have the right to stop the questioning at any moment, or stop the questioning with the purpose of consulting with an attorney.'  This admonition does little to explain that there are two separate bases for terminating the interrogation.  First, the more clear of the two rights comes second: it is true that during the interrogation, Ms. Heras De Melo-Samper retained the right to stop answering questions "in order to consult with an attorney."  Id.  She also retained the right to remain silent, regardless of whether she wished to consult with counsel, a fact that is not crystal clear from the admonition.  That right is a crucial component of the Fifth Amendment protections set forth in Miranda: "Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." Miranda, 384 U.S. at 474.

While this defect alone may not be sufficient to require suppression for failing to meet the "objective" of the Miranda warnings, see Cooper v. Dupnik, 963 F.2d 1220, 1239 (9th Cir. 1992) (en banc)., the form contains a far more serious flaw.  After the form attempts to explain to the suspect the scope of his right to cut off questioning, it then contains a purported waiver, or more accurately, renunciation of rights, provision.  The form reflects that in agreeing to speak with the agents, the suspect renounces the rights contained in the form, rights which include the (confusing) rendition of the right to cut off questioning.  Again, that simply is not true: a suspect may give up the right to remain silent and the right to consult with counsel before and

during an interrogation, but he never loses the right to cut off questioning by asserting the right to remain silent or the right to counsel; that right is "continuously" available. See Miranda, 384 U.S. at 444; Cooper, 963 F.2d at 1239.

**4.   This Court Should Sever the Trial or Restrict the Government from Adducing the Post-arrest Statements of the Codefendant.**

According to the Government, both Erick and Guadalupe Heras De Melo-Samper confessed post-arrest and their statements inculpated one another to a certain degree. Currently, the two are set for a joint trial. If this does proceed to a joint trial, Ms. Heras De Melo-Samper objects to the introduction of any of Erick's post-arrest statements under Crawford v. Washington, 541 U.S. 36 (2004). The statements of Erick unquestionably fall within the prohibited class of testimonial statements which cannot be introduced against an accused absent a prior opportunity of cross-examination.

As a prefatory matter, this is not just a Bruton v. United States, 391 U.S. 123 (1968), issue about whether a post-arrest statement implicates Ms. Heras De Melo-Samper. If statements are testimonial and the defendant has not had a prior opportunity to cross-examine the declarant, then the statements are inadmissible under Crawford. There is nothing in Crawford which suggests that there is a "this would have been admissible under Bruton" exception. Indeed, the whole logic of Crawford disproves that thesis.

"It is well-established that the out-of-court statements of a non-testifying defendant, even if admissible against the declarant, may not be used against a jointly tried codefendant unless otherwise independently admissible against that codefendant." United States v. Molina, 407 F.3d 511, 517-18 (1st Cir. 2005)(citing Lilly v. Virginia,

527 U.S. 116, 124, 144 L. Ed. 2d 117, 119 S. Ct. 1887 (1999); Bruton, 391 U.S. at 128; and Crawford, 124 S. Ct. at 1374.) Molina specifically recognizes that Crawford displaces the prior case law and holds that the Confrontation Clause categorically bars the introduction of testimonial hearsay unless the accused previously has had the opportunity to cross-examine the declarant.

The statements of Erick Heras De Melo-Samper are indisputably testimonial under any definition:

> Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard. Police interrogations bear a striking resemblance to examinations by justices of the peace in England. The statements are not *sworn* testimony, but the absence of oath was not dispositive. Cobham's examination was unsworn, see 1 Jardine, Criminal Trials, at 430, yet Raleigh's trial has long been thought a paradigmatic confrontation violation, see, *e.g., Campbell, 30 S.C.L., at 130*. Under the Marian statutes, witnesses were typically put on oath, but suspects were not. See 2 Hale, Pleas of the Crown, at 52. Yet Hawkins and others went out of their way to caution that such unsworn confessions were not admissible against anyone but the confessor. See *supra*, at ____, *158 L.Ed. 2d, at 189*.

Crawford, at 1365-66.

Thus, while there may be questions about what the exact definition of "testimonial" is[7] there is no question that police interrogations are subject to Crawford's rule.

Unless Erick Heras De Melo-Samper testifies, there is a Confrontation Clause problem with admitting his statements against his mother. That, standing alone, is sufficient reason to sever the trial.

---

[7]    "We leave for another day any effort to spell out a comprehensive definition of "testimonial." n10 Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the *Confrontation Clause* was directed." Id. at 1374.

1  <u>See</u> <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993)(noting that

2  admission of inadmissible evidence against a codefendant compromises a

3  specific trial right of a defendant and is cause to sever the trial).

4      Rule 14 of the Federal Rules of Criminal Procedure requires

5  severance or other relief whenever a defendant may be prejudiced by

6  joinder of defendants in an indictment or by joinder for trial

7  altogether.  <u>See</u> <u>United States v. Escalante</u>, 637 F.2d 1197, 1201 (9th

8  Cir. 1980); <u>United States v. Lutz</u>, 621 F.2d 940, 945 (9th Cir. 1980);

9  <u>United States v. Tousant</u>, 619 F.2d 810, 813 (9th Cir. 1980).  A decision

10 to sever multiple co-defendants' cases remains within the trial court's

11 discretion.   <u>See</u> <u>United States v. Doe</u>, 655 F.2d 920, 926 (9th Cir.

12 1981); <u>United States v. Seifert</u>, 648 F.2d 557, 563 (9th Cir. 1980).  To

13 warrant the issuance of a severance, the defendant must demonstrate that

14 a joint trial is "so manifestly prejudicial that it outweighs the

15 dominant concern with judicial economy and compels the exercise of the

16 court's discretion to sever." <u>Doe</u>, 655 F.2d at 926 (citations omitted).

17 <u>See also</u> <u>Zafiro</u>, 506 U.S. at 539.

18     A joint trial would greatly prejudice Ms. Heras De Melo-Samper for

19 two reasons.  Her codefendant is her son, she is put into an emotionally

20 untenable position of having to point out her son's guilt in order to

21 mount her defense.  Further, there is an all too real possibility that

22 the jury will presume that because of the genetic and emotional bond

23 between mother and son, the guilt of one makes it more likely that both

24 are guilty.   In other words, the jury will not be able to

25 compartmentalize the evidence of Erick's guilt as being separate from

26 his mother's.

27     Finally, it should be clear that Erick's statements are not usable

28

1  against his mother.  In <u>Crawford v. Washington</u>, 541 U.S. 36, (2004), the

2  Supreme Court overruled twenty-four years of precedent, holding that:

3  "where testimonial evidence is at issue, . . . the Sixth Amendment

4  demands what the common law required, unavailability and a prior

5  opportunity for cross-examination." 541 U.S. at 68.  Prior to <u>Crawford</u>,

6  "hearsay-type" evidence was admissible if it fell within a "firmly-

7  rooted" hearsay exception or bore particularized guarantees of

8  reliability.  <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Ohio v. Roberts</u>, 448 U.S. 56, 100 S. Ct.

9  2531 (1980).

10    All the post-arrest statements of Ms. Heras De Melo-Samper's co-

11 defendants are obviously testimonial.  The only time statements are

12 nontestimonial when made during police interrogation is if the primary

13 purpose of the interrogation is to enable police assistance to meet an

14 ongoing emergency. <u>Davis v. Washington</u>, 126 S.Ct. 2266 (2006).  This is

15 not the circumstance present in this case.  Instead, the statements were

16 aimed at "proving past events potentially relevant to later criminal

17 prosecution."  <u>Id.</u>

18    It matters not that these statements might satisfy the Rules of

19 Evidence; the new test is whether evidence sought to be introduced is or

20 is not "testimonial." <u>Id.</u> at 61, 124 S. Ct. at 1363 ("Where testimonial

21 statements are involved, we do not think the framers meant to leave the

22 Sixth Amendment's protection to the vagaries of the rules of evidence .

23 . . ."); <u>see</u> <u>also</u> <u>id.</u> at 69, 124 S. Ct. at 1374 ("Where testimonial

24 statements are at issue, the only indicium of reliability sufficient to

25 satisfy constitutional demands is the one the Constitution actually

26 prescribes: confrontation").

27    Post-<u>Crawford</u>, several courts have not allowed the government to

28

1  rely upon the rationale that certain statements were not offered for the

2  truth or were only offered show context or the effect on the listener

3  because "[u]nder the prosecution's theory, every time a person says to

4  the police 'X committed the crime,' the statement (including all

5  corroborating details) would be admissible to show why the police

6  investigated X.  That would eviscerate the constitutional right to

7  confront and cross-examine one's accusers." <u>United States v. Silva</u>, 380

8  F.3d 1018, 1020 (7th Cir. 2004) (reversing where district court admitted

9  officer's testimony about confidential informant's statements even

10 though government offered evidence not for the truth but to show why

11 certain actions were taken). In <u>United States v. Nielsen</u>, 371 F.3d 574

12 (9th Cir. 2004), the Court reversed a conviction where the trial court

13 admitted a government agent's testimony about the statements of the

14 defendant's girlfriend – made in response to police questioning –

15 although the government claimed they were offered not for their truth

16 but to show why the agents took the actions they did. Also, in <u>United</u>

17 <u>States v. Cromer</u>, 389 F.3d 662, 674 (6th Cir. 2004), that court did not

18 allow admission of testimony from officer's about confidential

19 informants' statements about and descriptions of the defendant and his

20 nickname "Nut" because it "explicitly, albeit not directly, informed the

21 jury that someone had implicated Nut in illegal activity." <u>Id.</u>

22     No testimonial statement is exempted from the categorical rule of

23 the Confrontation Clause simply because they may be admitted to show

24 "context," "effect on the listener" or to provide the "ebb and flow" of

25 the conversation; to do allow that kind of evidence would eviscerate the

26 Confrontation Clause.  <u>See</u> <u>Silva</u>, 380 F.3d at 1020.  Allowing that

27 evidence would run counter to <u>Crawford</u>'s goal of replacing court-created

28

1  exceptions with categorical constitutional guarantees. <u>See Crawford</u>,

2  541 U.S. at 67-68 ("By replacing categorical constitutional guarantees

3  with open-ended balancing tests, we do violence to their design. Vague

4  standards are manipulable, and, while that might be a small concern in

5  run-of-the-mill assault prosecutions like this one, the Framers had an

6  eye toward politically charged cases . . .where the impartiality of even

7  those at the highest levels of the judiciary might not be so clear.")

8        As much of the discovery has focused on the interrogation of Ms.

9  Heras De Melo-Samper's co-defendants and his own statements, this Court

10  should enter an order prohibiting the prosecution from introducing this

11  evidence unless it can also provide the declarant who made the

12  statements.

13  **5.    File Further Motions**

14        These motions are based on the information received thus far from

15  the Government. Should the Government disclose additional evidence, Ms.

16  Heras De Melo-Samper may need to file additional motions and she

17  requests the ability to do the same.

18                                    **IV.**

19                              <u>**CONCLUSION**</u>

20        Ms. Heras De Melo-Samper respectfully requests that this Court

21  grant his motion to dismiss the indictment, suppress evidence, and sever

22  defendants as explained above.

23                              Respectfully submitted,

24
    Dated: February 15, 2008            /S David J. Zugman
25                                       **DAVID J. ZUGMAN**
                                         Attorney for Ms. Heras De Melo-Samper
26

27

28