KAREN P. HEWITT
United States Attorney
STEWART M. YOUNG
Assistant U.S. Attorney
California State Bar No. 234889
United States Attorney's Office
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-6228
Fax: (619) 235-2757
Email: stewart.young@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 3:08-CR-211-BTM |
|---|---|---|
| | ) | DATE:          February 29, 2008 |
| Plaintiff, | ) | TIME:           1:30 P.M. |
| | ) | |
| v. | ) | GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS |
| | ) | |
| GUADALUPE HERAS | ) | [14-1] TO COMPEL DISCOVERY; |
| DE MELO-SAMPER (D1), and | ) | [14-2] TO DISMISS THE INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY; |
| | ) | |
| ERICK DE MELO-SAMPER HERAS (D2), | ) | [14-3] TO SUPPRESS STATEMENTS; [14-4] TO SEVER THE TRIALS; AND [14-5] TO GRANT LEAVE TO FILE FURTHER MOTIONS. |
| | ) | |
| Defendants. | ) | |
| | ) | TOGETHER WITH A STATEMENT OF THE FACTS AND THE MEMORANDUM OF POINTS AND AUTHORITIES, AND GOVERNMENT'S MOTIONS FOR: |
| | ) | |
| _____ | | [1] RECIPROCAL DISCOVERY |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Stewart M. Young, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's Joint Motions to Compel Discovery, Dismiss the Indictment, Suppress Statements, Sever the Trials of Defendants, and Compel Discovery and its Motion for Reciprocal Discovery. This response and motion is based upon the files and records of the

1  case together with the attached statement of facts and memorandum of points and authorities.

2                                               I

3                              **STATEMENT OF THE CASE**

4          On January 23, 2008, the Government filed a two-count indictment charging Guadalupe Heras

5  De Melo-Samper ("Heras") and Erick Melo-Samper Heras ("Melo-Samper") with violating 21 U.S.C.

6  §§ 952 and 960, importation of 5 kilograms or more of cocaine, and 21 U.S.C. § 841(a)(1), possession

7  of 5 kilograms or more of cocaine with intent to distribute.   The amount specifically alleged in the

8  indictment is 26.90 kilograms of cocaine. On January 24, 2008, Heras and Melo-Samper were arraigned

9  on the Indictment and both entered a plea of not guilty.

10                                              II

11                             **STATEMENT OF FACTS**

12         On December 27, 2007, Defendants entered the United States through the San Ysidro,

13  California, Port of Entry.  Melo-Samper was the driver, and Heras was the passenger, in a 2003

14  Mitsubishi Montero with California license plates.  When applying for entry into the United States,

15  Melo-Samper presented a Border Crossing Card for himself, as well as one for Heras, his mother.  He

16  then gave two negative customs declarations. When asked who owned the vehicle, Melo-Samper stated

17  to the CBP officer that the car was his.  He was then asked why he was driving a California-plated

18  vehicle, and he responded that he had not yet changed the registration on the vehicle.  He was then asked

19  if he was aware of the vehicle export requirements, and he did not give a clear answer to the CBP officer.

20  The vehicle was then referred to secondary.

21         In the secondary inspection area, a Narcotic Detector Dog ("NDD") screened the vehicle, and

22  that dog alerted to the odor of narcotics in the undercarriage of the vehicle.  A CBP officer then

23  inspected the vehicle after being informed of the NDD alert.  That officer peeled up the carpet in the

24  trunk area and noticed unusual welding marks.  He probed the corner of the welded area and noticed a

25  package wrapped in plastic and packaging tape.  A subsequent search of the vehicle resulted in the

26  discovery of a number of packages hidden inside the this welded area.  A total of 24 packages were

27  found totaling approximately 26.90 kilograms of a substance that field-tested positive for cocaine.

28         Agents then placed both Melo-Samper and Heras under arrest.  After receiving their Miranda

                                               2

warnings, both Melo-Samper and Heras agreed to speak with agents. Melo-Samper, after giving a story about buying the vehicle for $7,000 cash, admitted to knowledge of drugs in the vehicle. He further stated that he thought there would be about 10 kilograms of marijuana in the vehicle and admitted that he was instructed to drive the vehicle across the border and park it on the street. He thought he was going to be paid $1,000 for his activities. He further stated that Heras did not know they were smuggling drugs across the border.

Heras also agreed to speak with agents, and at first told agents a story about buying blankets and going to Disneyland or Universal Studios. She then stated that she knew they were smuggling drugs, but that she did not know what kind. When asked how much they would be getting paid, she responded "$100 per," and then stated that it would be "$100 per package." When asked how many packages, she stated she thought there would be about 20 packages, and that she would be getting $2,000. She further stated that Martin Gutierrez (the registered owner) was the contact that hired them to smuggle drugs into the United States and that she had spoke with Melo-Samper about helping her with the smuggling venture. She also stated this was her first time doing this.

### III

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY

The United States intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act, 18 U.S.C. § 3500, and Rule 16 of the Federal Rules of Criminal Procedure. Thus far, the United States has produced 66 pages of discovery and a DVD of statements. Defendants' specific requests are addressed below.

### (1) The Defendants' Statements

The United States recognizes its obligation under Rule 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendants the substance of Defendants' oral statements and Defendants' written statements. The United States has produced all of Defendants' oral and written statements that are known to the undersigned Assistant U.S. Attorney at this date and all available compact discs. If the United States discovers additional written or oral statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendants.

### (2) Arrest Reports, Notes and Dispatch Tapes

The United States has no objection to the preservation of the handwritten notes taken by any of the United States' agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the United States objects to providing Defendants with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The United States is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined under 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to the Defendants.

Additionally, the United States has produced all waiver forms, translations and recordings of any warnings given to the defendants. The Government has provided the Defendants with arrest reports.

**(3) Reports of Scientific Tests or Examination**

The United States will provide the results of any reports of scientific tests or examinations, should any be conducted.

**(4) Brady Material**

08-CR-211-BTM

The United States is well aware of and will continue to perform its duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment.  Defendants, however, are not entitled to all evidence known or believed to exist which is, or may be, favorable to either of the accused, or which pertains to the credibility of the United States' case.  As stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." <u>Id.</u> at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses.  <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief.  <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

**(5) Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendants an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendants' defense, or intended for use by the United States as evidence during its case-in-chief at trial, or obtained from or belongs to Defendants.   The United States need not, however, produce rebuttal evidence in advance of trial.  <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules.  However, the United States objects to any blanket request to preserve all

physical evidence.

### (6) Preservation of Evidence

The United States will preserve all evidence to which Defendants are entitled pursuant to the relevant discovery rules. However, the United States objects to any blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendants an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendants' defense or intended for use by the United States as evidence in chief at trial, or obtained from or belong to Defendants, including photographs. The United States has made the evidence available to Defendants and his investigators and will comply with any request for inspection.

### (7) Tangible Objects

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or intended for use by the United States as evidence during its case-in-chief at trial, or obtained from or belongs to Defendant. The United States need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### (8) Evidence of Bias or Motive to Lie

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendants. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

### (9) Impeachment Evidence

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

### (10) Criminal Investigation of Government Witness

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government]

witnesses are not discoverable." <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976); <u>United States v. Riley</u>, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); <u>cf.</u> <u>United States v. Rinn</u>, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records of the Government's intended witnesses.") (citing <u>Taylor</u>, 542 F.2d at 1026).

The United States will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief.  When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief.  <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607 F.2d 1305, 1309 (9th Cir. 1979).

### (11) Evidence Affecting Perception, Recollection, Communication or Truth-Telling

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling.

### (12) Name of Witnesses Favorable to the Defense

The United States objects to any request that it provide a list of every witness to the crimes charged who will not be called as a United States witness.  The United States has stated that it will comply with the request for its witness list before trial.  "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)."  <u>United States v. Hsin-Yung</u>, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting <u>United States v. Boffa</u>, 513 F. Supp. 444, 502 (D. Del. 1980)).  The United States is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendants.  <u>Wood v. Bartholomew</u>, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under <u>Brady</u>).  The United States will also comply with its discovery obligations regarding any exculpatory evidence that it might become aware of regarding the defendants.  But absent these obligations, the United States is unaware of any witness that may be favorable to the defendant.

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

### (13) Statements Relevant to the Defense

The United States will continue to comply with its obligations under <u>Brady</u>, <u>Jencks</u>, <u>Giglio</u>, and Rule 16, as pertains to any statement relevant to the defense. However, the United States objects to the broad nature of this request for "any statement that may be 'relevant to any possible defense or contention.'"

### (14) Jencks Act Material

The Jencks Act, 18 U.S.C. § 3500, requires that, after a United States witness has testified on direct examination, the United States must give the Defendants any "statement" (as defined by the Jencks Act) in its possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. <u>United States v. Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing <u>Goldberg v. United States</u>, 425 U.S. 94, 98 (1976)). While the United States is only required to produce all Jencks Act material <u>after</u> the witness testifies, the United States plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

Additionally, the United States anticipates that no witness who testified before the grand jury will testify at trial, so the United States does not anticipate that it will have to provide any of the Grand Jury transcripts to Defendants.

### (15) Giglio Information

As stated previously, the United States will comply with its obligations pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

### (16) Henthorn Evidence and Personnel Records of Government Officers Involved in the

**Arrest**

The United States will continue to comply with its obligations pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

### (17-18) Expert Witnesses

The Government will comply with Rule 16(a)(1)(G) and provide Defendants with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include the expert witnesses' qualifications, the expert witnesses opinions and the bases and reasons for those opinions.

### (D2's Number 4) Sentencing Information

Defendants claim that the United States must disclose any information affecting Defendants' sentencing guidelines because such information is discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under <u>Brady</u>.

The United States is not obligated under <u>Brady</u> to furnish a defendant with information which he already knows. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). <u>Brady</u> is a rule of disclosure, and therefore, there can be no violation of <u>Brady</u> if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no <u>Brady</u> obligation. <u>See United States v. Gaggi</u>, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendants' mitigation of punishment until after Defendants' conviction or plea of guilty and prior to his sentencing date. <u>See United States v. Juvenile Male</u>, 864 F.2d 641, 647 (9th Cir. 1988) ("No [<u>Brady</u>] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendants' demand for this information is premature.

### (D2's Number 5) Defendant's Prior Record

The United States will provide Defendant with a copy of his criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B), if such a record has not already been provided to Defendant.

### (D2's Number 6) Proposed 404(b) and 609 Evidence

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendants with official notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed.

**(D2's Number 13) Witness Addresses**

The United States has provided Defendants with the reports containing the names of the agents involved in the apprehension and interviews of Defendants. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the United States will provide Defendants with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The United States objects to any request that it provide a list of every witness to the crimes charged who will not be called as a United States witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The United States is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendants. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(D2's Number 19) Informants and Cooperating Witnesses**

If the Government determines that there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's identity to the Court for in-chambers inspection. See Roviaro v. United States, 353 U.S. 53, 60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997).

The United States has already stated it will comply with its <u>Brady</u>, <u>Giglio</u>, Jencks Act, and further Rule 16 discovery obligations.  The United States will comply with the structure of <u>Roviaro</u> if it determines that any confidential informant information is "relevant and helpful to the defense of [the] accused, or is essential to the fair determination of a cause." <u>Roviaro</u>, 353 U.S. at 60.

As the Court is aware, the Supreme Court has declined to adopt an absolute rule requiring disclosure of an informant's identity whenever it is relevant or helpful to a defendant's case.  <u>See</u> <u>Roviaro v. United States</u>, 353 U.S. at 62.  Indeed, as the D.C. Circuit stated in <u>United States v. Skeens</u>, 449 F.2d 1066, 1071 (D.C. Cir.1971), a "heavy burden ... rests on an accused to establish that the identity of an informant is necessary to his defense." <u>Id</u>. at 1070.  "Mere speculation" that an informant's testimony may assist the defendant is not sufficient to meet this burden.  <u>United States v. Mangum</u>, 100 F.3d 164, 172 (D.C. Cir.1996).  In determining whether the Defendant has met this burden, the Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense," all the while "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." <u>Roviaro</u>, 353 U.S. at 62.  The United States will comply with its <u>Roviaro</u> obligations, but it also requests that any information provided to Defendant be subject to in camera review by the Court.

**(D2's Number 23) Residual Request**

The United States has already complied with Defendants' request for prompt compliance with its discovery obligations prior to Indictment.  The United States will continue to comply with all of its discovery obligations, but objects to the broad nature of Defendants' further discovery requests.

**IV**

**THE INDICTMENT SHOULD NOT BE DISMISSED BECAUSE THE GRAND JURY INSTRUCTIONS PROVIDED TO THE JANUARY 2007 GRAND JURY DO NOT RUN AFOUL OF CURRENT NINTH CIRCUIT LAW**

A.    THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED

1.    Introduction

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007.  [Memorandum of Points and

Authorities (hereinafter "Memorandum")[1/] Although recognizing that the Ninth Circuit in <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found these two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the indictment should be dismissed.

In making his arguments concerning the grand jury instructions Defendant urges this Court to dismiss the indictment on two separate basis relating to grand jury procedures both of which were discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992).   Concerning the first attacked instruction, Defendant urges this Court to dismiss the indictment by exercising its supervising powers over grand jury procedures.  [Memorandum p.22.]  This is a practice the Supreme Court discourages as Defendant acknowledges citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure. ").  [<u>Id</u>.]  <u>Isgro</u> reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." <u>Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.</u>   Absent such prejudice-that is, absent " 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (Citation omitted, Emphasis added).  Concerning the second attacked instruction, in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution as a reason to dismiss the indictment.  Concerning that kind of a contention <u>Isgro</u> stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

---

[1/]    Defendant supplies a "Partial Transcript" of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted. [Appendix 1.] To amplify the record herein, we are supplying a redacted "Supplemental Transcript" which records relevant portions of the voir dire proceedings.  [Appendix 2.]

974 F.2d at 1094 (Citation omitted)[2/]

The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.   That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems.   It is entirely proper that you should receive this assistance.  If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[3/]  408 F.3d at 1203 (Footnote omitted).  "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law;  it receives no briefs or arguments from the parties.   The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'"  <u>Id</u>.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.    The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . .  The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207.  "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury

---

[2/]    In <u>Isgro</u> the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries.  They did not prevail.  974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment."  (relying on <u>Williams</u>)).

[3/]    The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it.  "We recognize and do not discount that some grand jurors might <u>in fact</u> vote to return a no bill because they regard the law as unwise at best or even unconstitutional.   For all the reasons we have discussed, there is <u>no post hoc</u> remedy for that;  the grand jury's motives are not open to examination."  408 F.3d at 1204 (Emphasis in original.)

08-CR-211-BTM

of the presumption of regularity and good faith that the branches of government ordinarily afford each

other." Id.

2.     The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the

criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused,
> I think three in this case, because they could not adhere to the principle that I'm about to
> tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress;
> that is, whether or not there should be a federal law or should not be a federal law
> designating certain activity is criminal is not up to you.  That's a judgment that congress
> makes.
>
> And if you disagree with the judgment made by congress, then your option is not
> to say "Well I'm going to vote against indicting even though I think that the evidence is
> sufficient" or "I'm going to vote in favor of even though the evidence may be
> insufficient."  Instead, your obligation is to  contact your congressman or advocate for
> a change in the laws, but not to bring your personal definition of what the law ought to
> be and try to impose that through applying it in a grand jury setting.

Partial Transcript pp. 8-9.[4/]

Defendant acknowledges that in line with Navarro-Vargas, 'Judge Burns instructed the grand

jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress;

that is, whether or not there should be a federal law or should not be a federal law designating certain

activity [as] criminal is not up to you.'" [Memorandum p. 9.]  Defendant notes, however, that  "[t]he

instructions go beyond that, however, and tell the grand jurors that, should 'you disagree with that

judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even

though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence

maybe insufficient.'" Id.  Defendant contends that this addition to the approved instruction, "flatly bars

the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution."

Id.  Defendant further contends that the flat prohibition was preemptively reinforced by Judge Burns

---

[4/]     The Supplemental Transcript supplied herewith (Appendix 1) recounts the excusing of
the three individuals.  This transcript involves the voir dire portion of the grand jury selection process,
and has been redacted,  to include redaction of the individual names, to provide only the relevant three
incidents wherein prospective grand jurors were excused.  Specifically, the pages of the Supplemental
Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38,
line 9 - page 44, line 17.

08-CR-211-BTM

when he "referred to an instance in the grand juror selection process in which he excused three potential jurors," which resulted in his "not only instruct[ing] the grand jurors on his view of their discretion; [but his] enforc[ing] that view on pain of being excused from service as a grand juror."[5/] Id.

In concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means. [Memorandum p. 16-20.] Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution." Id. This argument mixes-up two of the holdings in Navarro-Vargas in the hope they will blend into one. They do not.

Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws. As we will establish this reminder did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns' words cannot be parsed to say that they flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution because they do not say that. That aspect of a grand jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the term "should" was germane.[6/]    408 F.3d at 1204-06

---

[5/]    See Appendix 1.

[6/]    That instruction is not at issue here. It read as follows:

[Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged. To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

("'Should' Indict if Probable Cause Is Found"). This other instruction bestows discretion on the grand jury not to indict.[7] In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer." 408 F.3d at 1206. The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that an whether a certain person is associated with the commission of that crime, committed it or helped commit it.

> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.

> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per <u>Navarro-Vargas</u>, they were also told by Judge Burns they had the discretion not to return an indictment per <u>Navarro-Vargas</u>. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential

---

[7]    The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence. The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause. As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in <u>United States v. Marcucci</u>, 299 F.3d 1156, 1159 (9th Cir.2002) (Per curiam)). "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

jury nullification advocate.  See  Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005).  Thus, there was no error requiring dismissal of this indictment or any other indictment by this Court exercising its supervisory powers.

Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the Supplemental Transcript excerpts (Appendix 2) reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views.  Judge Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden he has to bear. "Absent such prejudice-that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]'-a dismissal is not warranted." Isgro, 974 F.2d at 1094.

### 3. The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

> [T]here's a close association between the grand jury and the U.S. Attorney's Office.
> . . .
> You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Partial Transcript p. 11

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries. They generally work together.

Partial Transcript p. 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury.  You're all about probable cause.  If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well.  As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Partial Transcript p. 20.[8]

---

[8]      Just prior to this instruction, Judge Burns had informed the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown

17

As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.

But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." [Memorandum p.22-24.] Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you.'" Id. From this lash-up Defendant contends:

These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

(1) I have to consider evidence that undercuts probable cause.

(2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

(3) Because no such evidence was presented to me, I may conclude that there is none. Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week [sic], but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

---

trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

18

08-CR-211-BTM

[Memorandum p.23-24.]  (Emphasis added.)[9/]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[10/] (Emphasis added)).  See also, United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury."  (citing Williams)) (Emphasis added).

However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[11/]  As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[12/]  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

---

[9/]    The term "presumption" is too strong a word in this setting.  The term "inference" is more appropriate.  See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three.  963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)).  See also United States v. Warren, 25 F.3d 890, 897 (9th Cir.1994).

[10/]    Note that in Williams the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury.  Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (Citation omitted).  The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55.  See also, United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000).  However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms.  974 F.2d at 1096.

[11/]    He recalled those days when instructing the new grand jurors.  [Partial Transcript pp. 12, 14-16, 17-18.]

[12/]    The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html

08-CR-211-BTM

In <u>United States v. Williams</u>, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the <u>policy</u> of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of <u>substantial evidence that directly negates the guilt</u> of a subject of the investigation, the prosecutor <u>must present or otherwise disclose</u> such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should <u>not result in dismissal of an indictment</u>, appellate courts <u>may refer violations of the policy to the Office of Professional Responsibility</u> for review.

(Emphasis added.)[13]/  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose '<u>substantial evidence</u> that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, <u>see</u> USAM § 9-11.233 ." (Emphasis added.)[14]/

The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors.  Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[15]/  If it does exist, as mandated by the USAM, the evidence should be presented to the

---

[13]/     <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm
Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[14]/     <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm

Similarly, this new section does not bestow any procedural or substantive rights on defendants.

Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E".  <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm

[15]/     Recall Judge Burns also told the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation. Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[16/]  There is nothing wrong  in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992) the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything  to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy.[17/]  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was

---

Partial transcript p. 19.

[16/]    Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder. Therefore, defense submissions to the grand jury will be few and far between.

[17/]    The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

1  unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast

2  an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or

3  any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates

4  Attorneys are "good guys," which was authorized by <u>Navarro-Vargas</u>.  408 F.3d at 1206-07 ("laudatory

5  comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that

6  it stands between the government and the accused and is independent,"  which was also required by

7  <u>Navarro-Vargas</u>.  408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does not

8  mean the instructions were constitutionally defective requiring dismissal of this indictment or any

9  indictment.

10  The "duty bound" statement constitutional contentions raised by Defendant do not indicate that

11  the "'structural protections of the grand jury have been so compromised as to render the proceedings

12  fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant

13  can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects

14  the fundamental fairness of the proceeding or if the independence of the grand jury is substantially

15  infringed."  <u>Isgro</u>, 974 F.2d at 1094 (Citation omitted).  Therefore, this indictment, or any other

16  indictment, need not be dismissed.

17  Additionally, on October 11, 2007, this Court denied a similar motion presented to it in <u>United</u>

18  <u>States v. Manuel Martinez-Covarrubias</u>, Case 07-CR-491 BTM.  And on December 5, 2007, Judge

19  Houston denied a similar motion presented in <u>United States v. Diana Jimenez-Bermudez</u>, Case 07-1372

20  JAH.  The United States agrees with a substantial portion of this Court's decision in the <u>Martinez-</u>

21  <u>Covarrubias</u> case, and also agrees with the Judge Houston decision as well.  The United States believes

22  the reasoning of both opinions are persuasive and attaches both orders as Attachment 3 and 4 for the

23  Court's perusal.

**V**

**<u>DEFENDANTS' STATEMENTS SHOULD NOT BE SUPPRESSED</u>**

24

25

26  **A. The Government Properly Mirandized Defendant.**

27  In this case, <u>Miranda</u> warnings did precede custodial interrogation.  Any questions that were

28  asked prior to <u>Miranda</u> warnings being given were solely biographical-type questions.  <u>United States v.</u>

22

Washington, 462 F.3d 1124, 1132-1133 (9th Cir. 2006).  Accordingly, agents did not violate Miranda by asking routine booking questions prior to providing Defendant with his Miranda warnings.

**B. Defendant's Statements Were Voluntary.**

No threats, physical intimidation, or psychological pressure was exerted by the agents to induce Defendants' statements.  Hutto v. Ross, 429 U.S. 28, 30 (1976); Townsend v. Sain, 372 U.S. 293, 307 (1963).  Additionally, Defendants have not complied with Criminal Local Rule 47(g)(1) and (2), which requires any motion to suppress statements also accompany a declaration regarding the facts and circumstances surrounding the motion to suppress.  While the Government argues that Defendants' statements were not coerced or involuntarily provided and argues that any Miranda waiver was voluntary, the Government does not oppose an evidentiary hearing conducted by the court on this issue.

According to Davis v. Washington, 512 U.S. 452, 458 (1994), and United States v. Younger, 398 F.3d 1179, 1187 (9th Cir. 2005), officers are free to question a suspect as long as he or she effectively waives the right to counsel.  In this case, defendants were asked whether they wanted to speak with agents after being read their Miranda rights.  Both defendants waived their Miranda rights and agreed to speak to agents.  As recently stated by the Ninth Circuit, "the suspect must actually invoke the right to counsel in order for officers to be barred from questioning the suspect."  Washington, 462 F.3d at 1134.  Indeed, if "a suspect merely makes an equivocal or ambiguous reference to an attorney, this is insufficient to require the cessation of questioning."  Id. (citing to Davis, 512 U.S. at 459; Younger, 398 F.3d at 1187).  In this case, Defendants made no reference to talking to an attorney nor requested to speak to an attorney after they had received their Miranda warnings.  Accordingly, Defendant's statements should not be suppressed, because no violation of Miranda occurred.

## VI

### DEFENDANTS' TRIAL SHOULD NOT BE SEVERED

Rule 8(b) of the Federal Rules of Criminal Procedure specifically provides for the joinder of defendants where they participated in the same series of acts or transactions constituting an offense or group of offenses.  Rule 8(b) provides that:

> The indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

1   "Co-defendants jointly charged are, *prima facie*, to be jointly tried." <u>United States v. Mariscal</u>, 939 F.2d

2   884, 885 (9th Cir. 1991), <u>citing</u> <u>United States v. Doe</u>, 665 F.2d 920, 926 (9th Cir. 1980); <u>see also</u> <u>United

3   States v. Silla</u>, 555 F.2d 703, 707 (9th Cir. 1977) ("compelling circumstances" generally required to

4   show necessity of separate trial).

5          Where, as here, initial joinder is proper, the granting or denial of a motion for severance is

6   governed by Rule 14(a) of the Federal Rules of Criminal Procedure.  Rule 14(a) provides in pertinent

7   part:

8          If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or
           the government, the court may . . . sever the defendants' trials, or provide any other relief that
9          justice requires.

10  Thus, in order to justify a severance under Rule 14, the defendant bears the heavy burden of

11  demonstrating undue prejudice.  <u>See, eg.</u>, <u>United States v. Arbelaez</u>, 719 F.2d 1453, 1460 (9th Cir.

12  1983).  The Supreme Court has held that "when defendants have been properly joined under Rule 8(b),

13  a district court should grant severance under Rule 14(a) only if there is a serious risk that a joint trial

14  would prejudice a specific trial right of one of the defendants or prevent the jury from making a reliable

15  judgment about guilt or innocence." <u>Zafiro v. United States</u>, 506 U.S. 534, 536 (1993).  For the reasons

16  outlined below, defendants' motion to sever should be denied.

17         Defendants have not demonstrated that each defendant will have antagonistic and mutually

18  exclusive defenses at trial.  Even when co-defendants present antagonistic defenses, such defenses "are

19  not prejudicial per se."  <u>Id.</u> at 538 (noting that a district court should grant a severance under Rule 14

20  only if there is a serious risk that a joint trial would compromise a specific right of one of the defendants,

21  or prevent the jury from making a reliable judgment about guilt or innocence).  The Supreme Court

22  noted that few courts have reversed convictions for failure to sever on the grounds of antagonistic

23  defenses.  <u>Id.</u>

24         To warrant severance on the basis of antagonistic defenses, co-defendants must show that their

25  defenses are irreconcilable and mutually exclusive.  See <u>United States v. Angwin</u>, 271 F.3d 786, 795-96

26  (9th Cir. 2001) (rejection of defense argument that ignorance is irreconcilable with a defense based on

27  a lack of guilty intent such as duress); <u>United States v. Sherlock</u>, 962 F.2d 1349, 1363 (9th Cir. 1992)

28  (mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating

1   the other does not generate the kind of prejudice that mandates severance).  Defenses are mutually

2   exclusive when "acquittal of one co-defendant would necessarily call for the conviction of the other."

3   United States v. Tootick, 952 F.2d 1078, 1081 (9th Cir. 1991); United States v. Throckmorton, 87 F.3d

4   1069, 1072 (9th Cir. 1996) (noting that "a defendant must show that the core of the co-defendant's

5   defense is so irreconcilable with the core of his own defense that the acceptance of the co-defendant's

6   theory by the jury precludes acquittal of the defendant").

7        Under Throckmorton, Defendant's motion to sever should be denied as to antagonistic defenses.

8   Defendants argument relies on United States v. Crawford, 541 U.S. 36 (2004).  Indeed, the United States

9   will seek to sanitize any statements implicating a co-defendant in order to ensure that Crawford is not

10  violated.  However, the statements are not inextricably intertwined that these statements cannot be

11  sanitized.  Indeed, the statements of Mr. Melo-Samper Heras, do not even implicate that Mrs. Heras De

12  Melo-Samper knew that drugs were in the car.  The United States will endeavor to ensure that any

13  statement demonstrating the knowledge of the co-defendant will not be put before the jury to

14  demonstrate the guilt of that co-defendant.  The Court has a number of methods that this can be done,

15  including instructing the jury that any statements made by the defendant can only be used to demonstrate

16  the guilt of that defendant, to impanel two different juries, or to judiciously sanitize the statements.  But

17  a wholesale suppression of such statements should not be warranted, and a severance of the defendants

18  is not warranted in this case either.  If the Court deems it necessary to consider severing the trial, the

19  Government would request a further hearing on this matter.

20                                          **VII**

21  **NO OPPOSITION TO DEFENDANT'S REQUEST FOR LEAVE TO FILE FURTHER
    MOTIONS**

22

23       The United States does not object to the granting of leave to allow Defendants' to file further

24  motions, as long as the order applies equally to both parties and additional motions are based on

25  newly discovered evidence or discovery provided by the United States subsequent to the instant

26  motion at issue.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VIII

## MOTION FOR RECIPROCAL DISCOVERY

The United States hereby moves for reciprocal discovery from the Defendants. To date Defendants have not provided any. The United States, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requests that Defendants permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendants and which Defendants intend to introduce as evidence in their case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendants, which Defendants intend to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendants intend to call as a witness. Because the United States will comply with Defendants' request for delivery of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure. The United States also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled.

In addition, Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except a statement made by Defendants. This rule thus provides for the reciprocal production of Jencks statements. The time frame established by the rule requires the statement to be provided after the witness has testified. To expedite trial proceedings, the United States hereby requests that Defendants be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

08-CR-211-BTM

# IX

## CONCLUSION

For the above stated reasons, the United States respectfully submits its Response and Opposition to Defendants' Motions for Discovery, and requests that its Motion for Reciprocal Discovery be granted.

DATED: February 28, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney


s/Stewart M. Young
STEWART M. YOUNG
Assistant U.S. Attorney
Email: stewart.young@usdoj.gov

08-CR-211-BTM

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. 3:08-Cr-211-BTM |
| Plaintiff, ) | |
| v. ) | CERTIFICATE OF SERVICE |
| GUADALUPE HERAS ) DE MELO-SAMPER (D1), and ) ERICK DE MELO-SAMPER HERAS (D2), ) | |
| Defendants. ) | |

IT IS HEREBY CERTIFIED THAT:

I, Stewart M. Young, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the United States' Response and Opposition to Defendants' Motions, as well as the Government's Motion for Reciprocal Discovery on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. David Zugman, Esq.

2. Jason Ser, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 28, 2008.

s/ *Stewart M. Young*
Stewart M. Young

08-CR-211-BTM